Filed 7/18/22  Tokio Marine America Ins. v. Prestig CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from 3citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TOKIO MARINE AMERICA INSURANCE COMPANY, | B312917 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20LBCV00504) |
| v. | |
| PRESTIG INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Law Offices of Larry R. Glazer and Nicolette Glazer for Defendant and Appellant.

Cammarano Law Group and Dennis A. Cammarano for Plaintiff and Respondent.

————————————

Tokio Marine America Insurance Company, as insurer-subrogee, sued Prestig Inc. (doing business as Prestige) pursuant to the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. § 14706) (Carmack Amendment), alleging Prestige had failed to deliver a cargo of lithium ion batteries in good order and condition to Panasonic Automotive Systems Company of America (PASCA). Prestige filed a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16.[1] The superior court denied the motion, ruling Tokio Marine's cause of action did not arise from protected speech or petitioning activity within the meaning of section 425.16, subdivision (e). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Tokio Marine's Complaint*

Tokio Marine insures Panasonic Corporation of North America and PASCA (collectively Panasonic). On January 19, 2021 Tokio Marine filed an amended complaint against Prestige asserting one cause of action for "Carrier Liability under the Carmack Amendment." Tokio Marine alleged that on or about March 6, 2020 Prestige, an interstate motor carrier, received a shipment of 1,024 cartons of lithium ion batteries "for carriage and delivery from Panasonic c/o Hanky Hanshin Express (USA) Inc. at 1561 Beachey Place, Carson, California to Panasonic at 10800 Ambassador Drive, Kansas City, Missouri." The complaint attached a copy of a bill of lading showing PASCA as the consignee, Prestige as the carrier and a "Carrier Signature" acknowledging receipt of the cargo in good order.

---

[1] Statutory references are to this code unless otherwise stated.

2

Prestige's driver was involved in a single vehicle accident, in which the tractor trailer went off the road and overturned. Tokio Marine alleged that, as a result of the accident Prestige failed to deliver the cargo in good condition to Panasonic. Tokio Marine sued Prestige for actual economic loss in the amount of $620,199.27, "having paid [Panasonic] for the loss, [and] stand[ing] in the shoes of its insured." Tokio Marine alleged that Prestige had not "paid any portion of the loss, despite demand therefore."[2] Tokio Marine's prayer for relief included the principal amount, pre- and postjudgment interest and costs.

3. *The Special Motion To Strike*

On February 18, 2021 Prestige filed a special motion to strike the complaint pursuant to section 425.16. Prestige described Tokio Marine as "[u]pset" that Prestige denied Panasonic's freight claim, and Tokio Marine filed the lawsuit to "exact economic revenge" against Prestige for "performing its regulatory duties." Prestige characterized the "gravamen" of Tokio Marine's cause of action as Prestige's denial of Panasonic's freight claim, which Prestige argued was protected activity under section 425.16 because the filing of a freight claim was a

---

[2]   According to evidence submitted with the parties' briefing on the special motion to strike, on August 31, 2020 counsel for Tokio Marine communicated a settlement demand in the amount of $300,000 to counsel for Prestige. The letter stated Tokio Marine would "proceed with litigation of the full amount of the loss without regard to any insurance coverage limitations" if the demand was not accepted within 30 days. Prior to the settlement demand, on March 31, 2020 Panasonic Corporation of North America presented a written freight claim to Prestige, which Prestige denied on April 20, 2020.

prerequisite to maintaining an action for cargo damage under the Carmack Amendment.  Prestige also argued the freight claims process itself was protected activity as an "official proceeding authorized by law" under section 425.16, subdivision (e)(2).  Prestige further contended its refusal of Tokio Marine's settlement offer prior to the filing of the lawsuit was protected activity.

Regarding the merits of the claim, Prestige argued Tokio Marine could not carry its burden to show a likelihood of prevailing because the litigation privilege barred the claim and, in any event, Tokio Marine had not made the required prelitigation freight claim.  Prestige also asserted various problems with the bill of lading upon which Tokio Marine relied, including that Tokio Marine was not a party to the non-negotiable bill of lading.

3. *The Superior Court's Ruling*

The superior court denied the motion, ruling Prestige had failed to carry its threshold burden of demonstrating Tokio Marine's claim arose from protected speech or petitioning activity within the meaning of section 425.16.  The court found that Tokio Marine's claim arose from the vehicle accident and not the prelitigation claims process or settlement discussions.   Because Prestige failed to carry its burden on the first step, the court did not reach the question of Tokio Marine's likelihood of success on the merits.

Prestige filed a timely notice of appeal.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

## DISCUSSION

1. *The Special Motion To Strike: Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC. v. City of Carson* (2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in

5

furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a special motion to strike under section 425.16, the trial court engages in a now-familiar two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni, supra,* 11 Cal.5th at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060.)

If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity (the first step), the court properly denies the motion to strike without addressing the probability of success (the second step). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Verceles v. Los Angeles United School Dist.* (2021) 63 Cal.App.5th 776, 784.)

We review de novo an order granting or denying a special motion to strike under section 425.16. (*Wilson*, *supra*, 7 Cal.5th at p. 884; *Park*, *supra*, 2 Cal.5th at p. 1067.)

2. *Tokio Marine's Cause of Action Under the Carmack Amendment Does Not Arise From Protected Activity*

The Carmack Amendment governs the liability of an interstate carrier for "actual loss or injury" of goods damaged in transit to "the person entitled to recover under the receipt or bill of lading." (49 U.S.C. § 14706(a)(1).) Three elements are required to establish a "prima facie case under this law: (1) that goods were delivered to the carrier in good condition; (2) that the shipment arrived at its destination in damaged condition; [and] (3) the amount of actual losses. [Citation.] Once the shipper has established the elements of his prima facie case, negligence is presumed, and the carrier must show both that it was free from negligence, and that the damage was the product of one of the common law exceptions to liability." (*Vacco Industries v. Navajo Freight Lines, Inc.* (1976) 63 Cal.App.3d 262, 269-270; accord, *Missouri P. R. Co. v. Elmore & Stahl* (1964) 377 U.S. 134, 138.) The Carmack Amendment preempts state law claims for "'all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the

7

payment of claims.'" (*Dictor v. David & Simon, Inc.* (2003) 106 Cal.App.4th 238, 247.)[3]

In support of its claim pursuant to the Carmack Amendment, Tokio Marine alleged Prestige was an interstate carrier that received a cargo of lithium ion batteries in good condition; the cargo arrived at its destination in damaged condition due to a vehicle accident; and the amount of actual loss was $620,199.27.

On appeal Prestige argues Tokio Marine's cause of action arises from "petitioning activities during the presentation and denial of the regulatory mandated freight claim process." Prestige insists the freight claims process is a prerequisite to any liability it may have for cargo loss under the Carmack Amendment thereby making the process a necessary element of Tokio Marine's cause of action. Prestige also argues Tokio Marine's prelitigation settlement demand and Prestige's denial of the same were protected activities.

As an initial matter, Tokio Marine's complaint does not contain any allegations about the freight claims process.

---

[3] The Carmack Amendment "'codified the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.'" (*Ward v. Allied Van Lines, Inc.* (4th Cir. 2000) 231 F.3d 135, 139-140.) It also "makes unlawful and void any provision in any contract, bill of lading, receipt, tariff schedule or rule or regulation purporting to limit the carrier's statutory liability." (*Bauer v. Jackson* (1971) 15 Cal.App.3d 358, 366-367.)

Nonexistent allegations cannot serve as the basis of a claim, and we decline to rewrite the complaint to consider whether facts that have not been alleged could withstand a special motion to strike. (See *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 621 ["[i]t would be inappropriate for us to insert into a pleading claims for relief based on allegations of activities that plaintiffs simply have not identified, even if the parties suggest on appeal how plaintiffs might have intended to frame those claims or attempt to identify the specific conduct or assertions of statements alleged to be false on which plaintiffs intended to base such claims for relief"].)

The complaint does allege Prestige did not pay for any cargo loss "despite demand therefore." A cause of action arising from a defendant's litigation activity implicates the right to petition and is subject to a special motion to strike. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 ["'[a] cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike"].) An attorney's prelitigation settlement communication falls within the protection of the anti-SLAPP statute. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1259.) Thus, the communications exchanged by the parties' counsel prior to the filing of the complaint, which referred to the filing of a lawsuit and document retention obligations, are protected activity within the meaning of section 425.16.

However, Tokio Marine's cause of action does not "arise from" the parties' settlement communications. The alleged wrongful act forming the basis for Tokio Marine's cause of action under the Carmack Amendment is the vehicle accident that damaged the cargo. Tokio Marine's allegation that Prestige

9

failed to pay for the loss despite its settlement demand is, at most, prelitigation conduct that explains why Tokio Marine resorted to filing its lawsuit. (See *Rand Resources, LLC v. City of Carson, supra*, 6 Cal.5th at p. 621 ["a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim"]; *C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700-701.)

Attempting to avoid this straightforward analysis of the elements of Tokio Marine's cause of action to recover for the damage to its insured's cargo, Prestige observes that Tokio Marine was not the shipper and had no contractual rights under the bill of lading. Rather, it asserts, Tokio Marine "is an insurance company seeking an equitable subrogation disguised as a Carmack Amendment claim." As such, Prestige argues, the only injury suffered by Tokio Marine was caused by Prestige's denial of the freight claim and refusal to pay the settlement amount demanded—protected activity—not the vehicle accident itself.

Prestige's analysis fundamentally misperceives the nature of Tokio Marine's rights and the necessary elements of its cause of action against Prestige after paying its insured for the cargo loss. An insurer-subrogee of the shipper identified on the bill of lading has standing to sue the carrier under the Carmack Amendment. (*OneBeacon Ins. Co. v. Haas Indus.* (9th Cir. 2011) 634 F.3d 1092, 1099.) As is true generally in the insurance context, the insurer, as subrogee, stands in the shoes of its insured and has the same rights (and must plead and prove the same elements) as that party. (See, e.g., *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1106

10

["In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid. [Citations.] When an insurance company pays out a claim on a property insurance policy, the insurance company is subrogated to the rights of its insured against any wrongdoer who is liable to the insured for the insured's damages"]; see generally *Church Mutual Ins. Co., S.I. v. GuideOne Specialty Mutual Ins. Co.* (2021) 72 Cal.App.5th 1042, 1066 ["'The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to "stand in the shoes"' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have"].) That it was Tokio Marine as Panasonic's subrogee, not Panasonic itself, that filed the lawsuit under the Carmack Amendment does not change either the elements of the cause of action or the section 425.16 step-one analysis.

Because Prestige did not carry its threshold burden under section 425.16, we need not consider whether Tokio Marine demonstrated a probability of prevailing on the merits of its claim. (*City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 80-81; *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823, 830.)

## DISPOSITION

The order denying the special motion to strike is affirmed. Tokio Marine is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.